WILLOUGHBY v. CITY OF FLORENCE.

1. STATUTE OF FRAUDS—PROMISE TO PAY DEBT OF ANOTHER.—A *verbal* promise of the mayor of a city to pay for a lot of lumber furnished a contractor, who was building a city hall, under contract to furnish all materials, under the statute of frauds cannot bind either the mayor or city to pay the debt.

2. ASSIGNMENT.—To establish an assignment of a fund to become due, it must be shown that the alleged acceptor had notice of the assignment before payment to the assignor.

Before KLUGH, J., Florence, February, 1897.    Affirmed.

Action by Ella F. Willoughby against the city council of the city of Florence.    Judgment of nonsuit.    Plaintiff appeals.

*Mr. W. F. Clayton*, for appellant, cites: *Municipalities act by agent:* 78 Ga., 480; 35 N. H., 477; 19 S. C., 420. *Matter of law should be raised by request to charge, and not nonsuit:* 26 S. C., 397. *Variance between allegation and proof not ground for nonsuit:* Code, 190, 191, 197; 17 S. C., 589; 33 S. C., 562.

*Mr. George G. Thompson*, contra, cites: *City did not authorize mayor to act:* Act 1890, 861, 862; 14 S. C., 403. *Failure of proof ground of nonsuit:* Code, 192; 3 S. C., 401; 21 S. C., 221, 226; 24 S. C., 165; 48 S. C., 298; 16 S. C., 192.

March 14, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.  This action was commenced on the 7th of April, 1896, for the purpose of recovering from the defendant the sum of $155.55, the price of certain lumber sold and delivered to one J. W. Robertson, a contractor engaged in the construction of a building— the city hall—for the city of Florence, in which said lumber was used. The allegation in the complaint is, that the said Robertson desired to purchase from T. C. Willoughby, the agent of the plaintiff, the said lumber, which was the

property of the plaintiff, offering in payment therefor his draft upon the city of Florence at sixty days' time; that plaintiff's agent refused to sell to the said Robertson, whereupon W. W. Hursey, then the mayor of the said city, requested and directed the said T. C. Willoughby, the agent of plaintiff, to deliver the lumber to Robertson, and the city would pay for it; "that plaintiff's agent, upon the assurance and purchase of W. W. Hursey, mayor, for the city of Florence, delivered the lumber to the said Robertson, taking at the same time, as evidence of the debt and as additional security, his draft, bearing date June 21st, 1893, for the sum of $155.55, drawn upon the city of Florence at sixty days' time."

The case came on for trial before his Honor, Judge Klugh, and at the close of the testimony on behalf of the plaintiff, which is fully set out in the "Case," the following statement appears: "At the close of plaintiff's testimony, the defendant moved for a nonsuit, on the following grounds: 1. Because it appears from the evidence that the alleged agreement was made with the mayor of the city of Florence, and there is no evidence that the city council adopted or confirmed the same. 2. Because the city council having made contract with Robertson to build the city hall at a specified price and furnish materials, and it appearing that lumber having been furnished Robertson, the city council of Florence nor the mayor have no authority to guarantee payment thereof, or assume responsibility so as to make the corporation liable, as the same would not be for a corporate or public purpose. 3. Because the action is for the price of lumber alleged to be sold to the city, whereas the proof shows that the lumber was furnished to Robertson, and the mayor agreed to pay the same out of any funds of the said Robertson; and if any cause of action exists against the mayor or city council, it would be for breach of said alleged contract or agreement, and there are no allegations in the complaint to sustain the latter cause of action. The said grounds of nonsuit are sustained, and it is ordered,

that the said nonsuit be granted and the complaint be dismissed."

From this judgment plaintiff appeals upon the three grounds set out in the record, which need not be stated here, as they simply impute error to the Circuit Judge in granting the nonsuit upon either of the three grounds upon which the nonsuit was asked for, copying from the same the gist thereof. It is conceded that the defendant, on the 1st of May, 1893, entered into a written contract with the said Robertson for the construction of the city hall, he to do all the work and furnish the materials necessary therefor, for the sum of $4,500, payable in the several instalments therein specified. It is a little singular that the written contract, as set out in the "Case," does not contain the stipulation that Robertson was to "furnish the materials," but it is conceded that such was the agreement, and the whole testimony proceeded on that assumption, and as there was testimony that the terms of the contract had been changed, we must assume that, under the contract, Robertson was to furnish all the materials necessary for the construction of the building. The plaintiff's case is based largely upon the testimony of her husband, T. C. Willoughby, who acted as her agent throughout the whole transaction. Amongst other things, he says, in his testimony: "In the month of June [1893], I bargained with Mr. Robertson for three car-loads of lumber; he was to pay cash for it; I afterwards agreed to wait sixty days. He brought me a draft for $155.55, payable in sixty days. I told him that I would not touch the paper under any circumstances. He then said that we will see the mayor and arrange for the city to pay you out of the next instalment. We went to see Mr. Hursey, the chairman of the building committee. Mr. Hursey said: Well, Mr. Willoughby, let Mr. Robertson have the lumber, and the city will reserve the money out of the next payment and pay you for it. After that understanding, I turned the lumber over to Mr. Robertson, and it was used in the building. I put the draft in the hands

of the cashier of the bank for collection. To my surprise, it was returned protested. I went to see the mayor about it. He said that there was no funds to pay it with then." The draft offered in evidence reads as follows: "$155.55. Florence, S. C., June 21st, 1893. Sixty days after date, pay to the order of T. C. Willoughby, agent, $155.55, value received, and charge the same to account of J. W. Robertson. To City of Florence, S. C." On the back is written the names of "M. J. Outlaw, J. C. White, F. Welch, W. H. Purvis, and Jerome P. Chase." Across the face is written, "Protested for non-payment; no funds. W. J. Brown, cashier." Another witness, Howe, who was engaged as foreman in constructing the building, testifies that while engaged in framing the roof of the building, Willoughby objected to his using the lumber, whereupon the matter was referred to Mr. Hursey. "He told me to go ahead with the work and not let it stop. * * * He told Mr. Willoughby all right, that he would see him paid out of Mr. Robertson's second payment. I went ahead and framed the roof." Another witness, Hudson, testifies, that he made contract with Robertson to furnish him with certain materials—hardware— in the construction of the building, upon the assurance of Mr. Hursey that the bills would be paid, and they were all paid. Another witness, Loyd, testifies that he was the city clerk, and when he was asked about the draft above referred to, says he thinks he was directed by Mr. Hursey to file the draft in the office, and that Mr. Hursey said "that it would be paid when we got in funds." This witness also testifies that when Robertson left, he thinks "that he had been paid his full contract price." Also that Robertson, before he left, had completed the building all but the roof, which was finished by the city council.

After a careful consideration of the testimony, the most material portions of which we have stated above, we agree with Judge Klugh, that there was no testimony tending to fix any legal liability upon the defendants for the lumber bill of the plaintiff; and hence there was no error in grant-

ing the nonsuit. The city council having a contract with Robertson for the construction of the city hall, by which he was to do all the work and furnish all the materials, no officer or agent of the city council would have any authority to bind the city council to pay for any materials furnished the contractor, at his request, and used in the construction of the building, especially when it appears from the testimony introduced by the plaintiff, that the city council had paid the contractor in full, not only for the work but for the materials used in the construction of the building, which the contractor was bound to furnish at his own expense. The testimony leaves no doubt of the fact that the lumber in question was delivered to Robertson under contract with him, just as the materials furnished by the hardware merchant, Hudson, were; and while it is true that, as in the case of the hardware merchant, the plaintiff declined to deliver this lumber to Robertson except upon the assurance of Mr. Hursey that it would be paid for out of the funds which would become due to Robertson by the city council under the contract with him; yet there is not the slightest testimony that the city council ever made any contract with the plaintiff for the purchase of the lumber.

It may be that the plaintiff could have protected herself and secured the payment of her claim by taking proper proceedings to secure a lien on the building, under the provisions of sections 2465 and 2466, Rev. Stat., as amended by the act of 1896 (22 Stat., 197); but this she did not do. On the contrary, she was content to rely upon the verbal assurance of the then mayor, Mr. Hursey, that the amount would be paid out of the funds of Robertson when the next instalment became payable, taking, at the same time, the draft of Robertson on the city "as evidence of the debt and as additional security," as is alleged in the complaint. It is not pretended that this draft was ever accepted in writing either by the city council or by any officer or agent of the corporation; and there is no evidence that Mr. Hursey, as mayor, even verbally accepted the draft. So that the only

question is, whether the mere verbal assurance of Mr. Hursey that the amount would be paid out of the funds due Robertson, when the next instalment of the contract price became payable, would make the defendant liable. In the first place, there was no testimony that the defendant ever authorized Mr. Hursey to give any such assurance; and inasmuch as, under their contract with Robertson, the city council was under no obligation to furnish any of the materials necessary for the construction of the building, it is not at all likely that they would give any officer or agent authority to assume the payment of the debt due by the contractor for materials which he was bound to furnish at his own expense. But even if it could be assumed that Mr. Hursey had authority to give such assurance, that would not bind either him or the city council, as the statute of frauds expressly declares that no action shall be brought to charge any person "upon a special promise to answer for the debt, default or miscarriage of another person, * * * unless the agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing" (Rev. Stat., sec. 2151); and it is not pretended that the assurance relied on was in writing. That this is so, is abundantly shown by the following cases: *Leland* v. *Creyon*, 1 McC., 100; *Richardson* v. *Richardson*, 1 McM., 280; *Bronson* v. *Stroud*, 2 McM., 372; *Kinloch* v. *Brown*, 2 Speer, 284; and *Kinloch* v. *Brown*, 1 Rich., 223. See, also, *Taylor* v. *Drake*, 4 Strob., 431, recognized and followed in *Williams* v. *Caldwell*, 4 S. C., 100, where it was said that if the person for whose use goods are furnished be liable at all, any promise by a third person to pay that debt must be in writing. Now, in this case, it is very certain that Robertson, who bought the lumber from plaintiff, and to whom it was delivered, remained liable for the price thereof, for, in the complaint, it was alleged that his draft was taken by the plaintiff's agent "as evidence of the debt and as additional security," and T. C. Willoughby, in his testimony, says that the lumber account "had been

liquidated and put in the draft." This conclusively shows that Robertson was still liable for the debt which he had evidenced or liquidated by his draft. So that plaintiff, at most, can only rely on the *verbal* assurance given by Hursey, the then mayor of the city, that this debt of Robertson should be paid; and this, the cases above cited show, is wholly insufficient, under the statute of frauds, to bind the defendant.

It may be possible that the plaintiff, by proper allegations and proofs, could establish her claim against the city council by treating the draft as an assignment by Robertson to her of so much of the amount due him by the city council, under his contract with the city, as would be necessary to pay the amount due by Robertson to the plaintiff for the lumber, but the complaint does not contain the allegations necessary to make such a claim, and there is an entire absence of any testimony to sustain such a claim. One of the essential allegations to present such a claim would be that the defendant was notified of the assignment before it had paid Robertson the amount due him under his contract, and the complaint contains no such allegation, and there is no testimony to sustain it even if it were made; for it does not appear *when* the defendant, or even Mr. Hursey, the mayor, received any notice that the draft had been given, further than what might be inferred from the testimony of Brown, the cashier of the bank, that it was about the time that the draft became payable; but there is an entire absence of any testimony that such notice was received before the defendant had settled with Robertson; indeed, the words "no funds," written across the face of the draft, when it was protested, would seem to indicate that the defendant then owed Robertson nothing.

It seems to us, therefore, that the action could not, in any view of the case, be maintained, and hence the nonsuit was properly granted.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.